COOPER & JONES v. HALL. (No. 7172.)

(Court of Civil Appeals of Texas. Dallas. June 6, 1914. Rehearing Denied June 27, 1914.)

1. MASTER AND SERVANT (§ 278*) — INJURIES TO SERVANT—JURY QUESTION.

In an action by a carpenter injured by the fall of the scaffold upon which he was working, evidence *held* to sustain a finding that defendants failed to furnish proper material for the construction of the scaffold.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§ 116*)—INJURIES TO SERVANT—DUTY OF MASTER.

Where a master causes a scaffold to be built under his direction, he must exercise ordinary care to see that it is reasonably safe, but he need not supervise the building, where it is erected by the servants without any directions, though he is bound to use ordinary care to furnish suitable material where he directs what material shall be used.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

3. MASTER AND SERVANT (§ 288*) — INJURIES TO SERVANT—JURY QUESTION.

In a personal injury action by a servant, the servant's assumption of the risk from an insufficient scaffold which fell with him *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

4. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL.

The refusal of special charges which are covered by the charge given is not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

5. TRIAL (§ 253*)—INSTRUCTIONS—ISSUES.

Where the court limited the right of recovery by a servant, injured by the fall of a scaffold, solely to the master's failure to furnish proper material with which to erect it, a charge that if the scaffold could have been made safe by the workmen, and could have been maintained in a safe condition by them, verdict should be for the master is properly refused, because disregarding the issue of the master's failure to furnish suitable material.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

6. MASTER AND SERVANT (§ 116*)—INJURIES TO SERVANT—DEFENSES.

Where a master furnished defective lumber for a scaffold, it cannot escape liability for injuries to a servant by the fall of the scaffold because the use of the scaffold had weakened it, unless the weakened condition of the scaffold was due solely to use.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

7. TRIAL (§ 260*)—INSTRUCTIONS OTHERWISE GIVEN.

In an action by a servant injured by the fall of a scaffold, where the court's general charge required the jury, in order to return a verdict for plaintiff, to find that the proximate cause of the fall of the scaffold was the failure of the master to furnish suitable materials, the refusal of special charges that the master was not liable if the fall of the scaffold was caused through the fault of other servants was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

8. TRIAL (§ 284*)—INSTRUCTIONS—OBJECTIONS—WAIVER.

Errors in instructions other than fundamental errors are waived, unless objection is made and exception taken as required by Acts 33d Leg. c. 59.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 683–685; Dec. Dig. § 284.*]

9. APPEAL AND ERROR (§ 263*)—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.

The giving of an instruction on an issue not raised by the pleadings is fundamental error which can be reviewed, though the appellant did not reserve his exceptions in the trial court as required by Acts 33d Leg. c. 59.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516–1523, 1525–1532; Dec. Dig. § 263.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

10. MASTER AND SERVANT (§§ 264, 291*)—IN-
JURIES TO SERVANT—INSTRUCTIONS—APPLI-
CABILITY TO PLEADINGS.

The petition of a servant injured by the
falling of a scaffold alleging that the master
failed to furnish the servant a safe place in
which to work, in that the scaffold was weak
and insufficient, warrants the admission of evi-
dence that the scaffold was insufficient because
the material furnished was wet and spongy and
would not hold nails; hence the giving of an
instruction submitting the issue of the insuffi-
ciency of the material was proper.

[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 861–876, 1133, 1134,
1136–1146; Dec. Dig. §§ 264, 291.*]

11. TRIAL (§ 108½*)—SELECTION OF JURORS—
VOIR DIRE EXAMINATION.

In a personal injury action by a servant,
it was not error to ask the jurors on their voir
dire examination whether they had any stock
in an employers' liability insurance company or
were in any way connected with any such com-
pany which was insuring employers.

[Ed. Note.—For other cases, see Trial, Dec.
Dig. § 108½.*]

12. APPEAL AND ERROR (§ 1045*)—REVIEW—
HARMLESS ERROR.

The allowance of improper questions up-
on the voir dire examination of jurors is not,
under rule 62a (149 S. W. x), reversible error,
where it did not appear that defendant was
prejudiced.

[Ed. Note.—For other cases, see Appeal and Er-
ror, Cent. Dig. §§ 4124–4127; Dec. Dig. § 1045.*]

Appeal from District Court, Collin Coun-
ty; M. H. Garnett, Judge.

Action by J. T. Hall against Cooper &
Jones. From a judgment for plaintiff, de-
fendants appeal. Affirmed.

Thomas & Rhea, of Dallas, for appellants.
J. C. Patton, of Dallas, and R. C. Merritt and
W. R. Abernathy, both of McKinney, for ap-
pellee.

TALBOT, J. This suit was brought by the
appellee against the appellants to recover
damages for personal injuries received by
him while in the employment of appellants
as a carpenter, and assisting in the con-
struction of a building in the city of McKin-
ney, Collin county, Tex. It appears that
while the plaintiff was engaged in removing
part of a girder in said building a scaffold
on which he was working gave way and fell,
causing the injuries of which he complains,
which were serious and permanent. The
grounds of negligence alleged are:

(1) "That the defendants failed to exercise
proper care as required by law to furnish plain-
tiff a safe place in which to work, in this that
the scaffold upon which plaintiff was placed to
work, and upon which he had to work, was
weak and insufficient for the purpose for
which it was used, and not sufficiently nailed
or braced to hold the weight of the workman
required to work thereon, and by reason there-
of the same gave way and plaintiff was caused
to fall."

(2) That defendants "failed to properly main-
tain said scaffold upon which plaintiff and his
colaborers had to work, and by reason thereof
the same gave way and he fell and was injured."

The defenses alleged are a general denial,
assumed risk, contributory negligence, and

that the scaffold on which the plaintiff was
working, and by the fall of which he was in-
jured, was a temporary structure which had
been erected by plaintiff and his fellow serv-
ants, and that said scaffold fell by reason of
the failure of the plaintiff and his fellow
servants to make the same safe in accordance
with the express instructions of the de-
fendants. The trial of the case resulted in
a verdict and judgment in favor of the plain-
tiff for $4,500, and the defendants appeal.

Appellants' first, second, and third assign-
ments of error, as numbered in the brief, are
presented together. The first is, in substance
and effect, that the verdict of the jury is
without evidence to support it. The third
that the court erred in not giving in charge to
the jury the first special charge of defendants
directing that a verdict be returned in their
favor. The second is as follows:

"The verdict is against the great preponder-
ance of the evidence to such an extent as to
show that the jury were influenced by bias in
favor of the plaintiff, in that the great pre-
ponderance of the evidence shows that plaintiff
knew and realized the condition of the timber
out of which the scaffold was constructed, and
the danger, if any, that existed in the use of
such material, and therefore assumed the risk,
if any, from using the material in the construc-
tion of said scaffold, and the court erred in
overruling this defendant's motion for a new
trial presenting such error to the court as is
shown in paragraph 2 of the defendant's first
amended motion for a new trial."

The propositions contended for by appel-
lants, in substance are:

(1) That, as the uncontradicted evidence
showed that appellants were not legally lia-
ble to the appellee for any injuries received by
him, they were entitled to a verdict.

(2) That "when a temporary structure, such
as a scaffold, is erected by a servant and his
fellow servants, for their use in erecting a
building, out of material furnished by the mas-
ter, such workmen assume the risk of its being
safe, and the master is not liable for injuries
caused to one of them by the fall of such scaf-
fold."

(3) That, as the evidence showed that there
was plenty of suitable material out of which to
build the scaffold, and the appellee having se-
lected the material himself, and having with his
fellow servants constructed the scaffold as they
saw fit, the appellant is not liable for injuries
received by the appellee by reason of the fall
of such scaffold.

(4) That "appellee having worked at the car-
penters' trade for 25 years, and having se-
lected the material himself out of which to
build the scaffold, knowing the kind of material
used, and knowing that some of it was wet
when he put it in the scaffold, he assumed the
risk of using the scaffold as erected, and the
appellants are not liable, even though such
scaffold fell on account of such material being
used in constructing it.

(5) The hazards arising as the work proceeds
are regarded as being the ordinary dangers of
the employment, and by his acceptance of the
employment the servant necessarily assumes
them. If, therefore, the scaffold fell by reason
of its being loosened by the use to which it was
put by appellee and his fellow workmen, the
appellants are not liable to him for the in-
juries caused thereby.

(6) A master is not liable to a servant for in-
juries caused by the act of a fellow servant.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Andy Martin being a fellow servant of appellee, and the scaffold having fallen by reason of the failure of the said Martin to properly nail the brace to the horizontal piece, the appellants are not liable to appellee."

We shall not undertake to discuss the foregoing propositions in detail. The facts upon which they are predicated are in no instance undisputed. On the contrary, the evidence bearing upon the controlling question involved is so conflicting that we would not be warranted in reversing the case because of either contention made. The theory, as we understand, of the plaintiff was and is that because of the softness and unsuitableness of some of the material furnished by appellants with which to construct the scaffold in question the nails holding the brace, which gave way and caused the scaffold to fall, pulled out, while that of the appellant was and is, in substance, that this brace was negligently and insecurely nailed to a horizontal piece of the scaffold by the plaintiff himself or his fellow servants, and that this was what alone caused the scaffold to fall. By the court's charge the plaintiff's right to recover was made to depend solely upon the correctness of his theory as above outlined. The charge of the court submitting the issue is as follows:

"Now, bearing in mind the above and foregoing instructions: If you should find and believe from the evidence that in the necessary discharge of their duties it became necessary for plaintiff and other employés of defendants to construct a scaffold upon which to work, and you further find and believe that the material used in erecting said scaffold was not proper and suitable, and that by reason thereof said scaffold was not a reasonably safe place to work, and you further believe that the defendant Jim Cooper directed plaintiff to get certain material for use in erecting said scaffold, and you further find and believe that, in selecting said material, defendants were guilty of negligence, and that such negligence, if any, was the direct and proximate cause of plaintiff's injuries, then you should return a verdict in favor of plaintiff, unless you should find for defendants under instructions hereinafter given you."

[1] While the evidence upon this issue, or the cause of the scaffold's falling, was conflicting, yet it was amply sufficient to authorize a finding by the jury that appellants failed to furnish proper and suitable material, at least in part, with which to construct the scaffold, and that, as a proximate result of such failure, the scaffold fell, and plaintiff was thereby injured. The following testimony given upon the trial sustained, we think, this conclusion:

Andy Martin testified:

"I saw the scaffold after it had fallen, and helped to put it back the next day. The nails had pulled out where the brace was nailed to the end of the horizontal piece, which let the horizontal piece drop down, and the plank that we were standing on shot off. The horizontal piece was wet. I have had about four or five years' experience at carpenter work. There were two nails in the brace where the crosspiece pulled out. If the lumber had been dry and seasoned, it is my opinion that the two nails would have been sufficient to have held.

Jim Cooper [one of the appellants] told us to use the secondhand lumber that was up there. This lumber had been used before. These 2x4½ were very good, only they were wet and soggy, as it had been raining quite a lot. When lumber becomes wet and soggy it makes it spongy, and the nails will pull out easier. There was no dry lumber at the building that we could have used. Mr. Cooper instructed us to use that lumber."

Jim Cooper, one of the appellants, testified:

"A platform, constructed as this one was, with only one or two nails in it, was not dangerous for two men to work on. We work lots of times on one nail. I saw that there was just one nail where they had nailed the braces to the end of the horizontal pieces, and I told them to put more nails in it. I have worked on the scaffold with just one nail in it lots of times, especially a 16 spike. Under ordinary conditions one nail is sufficient. I cannot say what caused these nails to pull out. It was either from the jar of putting the timbers upon it or from the wet lumber. I instructed them to put more nails in the braces, because we were using heavy lumber. In putting up this girder they had to have this lumber on both sides of the column and would work on both sides. The nails had pulled out from the plank, and had not split or broken the wood, and had not pulled out of the diagonal brace. I could not say how this crosspiece was with reference to being wet and spongy. I do not know. It had only one or two nails in it. I do not know whether the particular piece of wood out of which the brace that fell had been made had been used in making the forms for the concrete on the building. I know it had been rained on and wet, and I know that any wood that is rained on will get more or less soggy and spongy, and will not hold nails as well as a piece that has not been rained on. Mr. Hall [appellee] was not a regular carpenter. He did not tell me when I hired him that he was a regular carpenter. He said he was handy with tools. I agreed to give him $1.75 a day. He was just hired as a work hand. The forms that the lumber had been used in was forms for making the concrete foundation of a building. These forms had been used on the cotton mill, and not on this Elks' building. We made these forms by taking 2x4's every two feet, and nailing ship-lap on one side of them putting one nail in, then put the forms in the trenches, which trenches were 6 to 10 feet deep, and poured the wet concrete in these forms, and let it set there three or four days. The 2x4's did not touch the wet concrete at all. The ship-lap was next to the wet concrete. The 2x4's would be exposed to the weather; if there were any rains the lower end of the 2x4's at the bottom of the ditch would rest on dry concrete. This dry concrete was 15 or 18 inches, had been poured into the ditch and thoroughly dry before the forms were put in. Of course a 2x4 will absorb some moisture. These 2x4's had been brought from over at the cotton mill two or three weeks before they were used in this scaffold. They had been lying, and it had been raining but very little. We might have quit work on Tuesday on account of rain; I don't remember. I couldn't say for sure whether we began this work right after the big rain or not. They were not under any roof, but were exposed to the rain. I suppose a piece of dry lumber will hold a nail better than one that is wet and sappy. The mistake of putting four pieces in the girder instead of three was my mistake."

J. T. Hall, appellee, testified:

"I asked Mr. Cooper where the stuff was, and he said just to pick it up around the building; that there was plenty of it. We picked it up

around the building there wherever we could get it. I knew that the lumber was wet at the time I was using it; I knew it was second-hand lumber; but did not know what it had been used for. I could not say that I have ever had any experience showing the effect of nails holding or not holding in wet lumber. I did not know the scaffold was dangerous when I went up on it to work. I did not know how many nails it had in it, and did not know the condition of the fiber of the wood or whether the nails would hold or not. I did not have anything to do with superintending or directing how the scaffold should be built. The only suggestion that I made in the whole thing was that Mr. Cooper and I were standing about the front and I was hunting for more braces and was fixing to have some for both sides, and Mr. Cooper remarked that one was sufficient, and that is all the suggestion I made about the scaffolding."

Walker Cooper testified:

"My father had charge of the building. He instructed us to build the scaffold, told us where to get the lumber, inspected it, and told us to renail it. He was in charge, looking after it, and was supposed to give instructions regarding it. He pointed out the material to build it with, and looked after the details of the building, and told us to get up on it and fix the girder. After the platform fell I examined it. There were two nails in the end, and one of them had been clinched. Both of them had pulled out. The lumber was damp. It was not very soft. The nails never split them, but pulled through them. The lumber was not very spongy. The lumber had been used before. I had seen it before, out at the cotton mills, where it had been used to make forms. It had been out at the cotton mills about ten days before it was brought over to this building, and had not been over at this building but two or three days. It had been rained on one day."

[2, 3] The law seems to be well settled that, where a master causes to be built under his direction and control a platform, scaffold, or like structure for the use of his servants in the prosecution of their work, it is his duty to exercise ordinary care to see that it is reasonably safe for the purpose designed or contemplated. But where the structure is erected by the servants from material furnished by the master, and the master has no direction or control of the construction, he is not liable for injuries sustained by one of the servants or workmen by reason of defects in the structure, *provided he has used reasonable care in the selection of proper and suitable material.* 26 Cyc. p. 1115. The evidence in this case is probably sufficient to show that the scaffold in question was caused to be built under the direction and control of appellants, but if, in fact, it was erected by appellee and his colaborers without direction or control of appellants, yet the material with which it was constructed was furnished by appellants, and, under the rule of law above stated, it was their duty to use ordinary care to select and furnish proper and suitable material therefor. This the jury has found appellants did not do. Whether appellee, at the time the scaffold was erected, knew, or ought to have known, that the defective material which caused the scaffold to fall was defective, and hence assumed the risk of using the scaffold as erected were

issues of fact for the determination of the jury. Upon this issue the court charged the jury thus:

"If you should find and believe from the evidence that the material or any of it selected and furnished by defendant was unsuitable, but you further find that the condition of said material was obvious and apparent or known to plaintiff at the time, or must necessarily have been known to him in the exercise of ordinary care in the discharge of his own duties, and you further find that the danger and the attending risk of using such material in said scaffold was apparent or known to plaintiff, or, in the exercise of ordinary care in the discharge of his duties, would have been known to him, then you are instructed that plaintiff assumed the risk of being injured in working on said scaffold, and you will find for defendants."

The issue, then, of assumed risk being one of fact, and the jury, guided by a full and fair charge, having decided the issue favorable to appellee, it should not be disturbed on appeal. It may also be said that whether appellee's injuries were caused by the act of a fellow servant in failing to properly nail the brace which gave way to the horizontal piece of the scaffold was an issue of fact for the jury, and, the court having properly submitted said issue, and the jury having resolved it in favor of appellee, we would not be warranted in setting their finding aside.

[4, 5] There was no error in refusing the special charges made the basis of appellants' fourth, fifth, and sixth assignments of error. The charges to which the fourth and sixth assignments relate were sufficiently covered by the court's main charge, and the special charge to which the fifth assignment of error relates was not a proper application of the law to the facts. The charge reads:

"If you find and believe from the evidence that the scaffold could have been made safe by the workmen, and could have been maintained in a safe condition by them, and that by reason of their failure or the failure of any one of them so to do, the scaffold fell, you will return a verdict for the defendants."

The court limited plaintiff's right of recovery solely to the issue of appellants' failure to furnish proper material with which to erect the scaffold, and this charge ignored that issue, and authorized a verdict in favor of the appellants, even though the proximate cause of the accident and appellee's injuries was the negligence of appellants in furnishing improper and unsuitable material to build the scaffold.

[6] The seventh assignment of error complains of the court's refusal to give in charge to the jury the following special charge:

"If you find and believe from the evidence that the scaffold became weakened by reason of the use made of it by the workmen in erecting the girder, and that such weakening, if any, was the proximate cause of the failure of such scaffold, then you will return a verdict for the defendants."

We think there was no error in refusing this charge. Appellants could not escape liability because of the weakened condition of the scaffold from use, unless such condition was the *sole* proximate cause of the accident

and injury. In other words, if the scaffold became weak from use and wet and spongy lumber combined, then appellants, the other facts concurring, would be liable. Again, this charge ignored the only issue upon which appellee's right to recover was made to depend by the general charge, and would have justified a verdict for appellants, notwithstanding appellants may have been guilty of negligence in furnishing defective lumber to be used in building the scaffold. The charge does not tell the jury that, if they should find that the material furnished by appellants was proper and suitable for the purpose contemplated, and should further find that the scaffold had become at the time it collapsed weakened by use, etc., and that such weakened condition was the proximate cause of its falling, to find for defendants. Had such a charge, or its equivalent, been requested and refused, a different question would probably be presented.

[7] Again, under the court's general charge, the jury, in order to return a verdict in favor of the appellee, were compelled to find that the proximate cause of the accident and injury to appellee was the failure of the appellants to furnish proper and suitable material with which to erect the scaffold, and it cannot reasonably be said that the refusal of the court to allow the special charges referred to resulted in injury to appellants.

[8] The tenth assignment of error complains of the following paragraph of the court's charge, namely:

"Now, bearing in mind the above and foregoing instructions: If you should find and believe from the evidence that in the necessary discharge of their duties it became necessary for plaintiff and other employés of defendants to construct a scaffold upon which to work, and you further find and believe that the material used in erecting said scaffold was not proper and suitable, and that by reason thereof said scaffold was not a reasonably safe place to work, and you further believe that the defendant Jim Cooper directed plaintiff to get certain material for use in erecting said scaffold, and you further find and believe that in selecting said material defendants were guilty of negligence, and that such negligence, if any, was the direct and proximate cause of plaintiff's injuries, then you should return a verdict in favor of plaintiff, unless you find for defendants under instructions hereinafter given you."

It is contended that this charge submitted an issue not made by the pleadings, and not raised by the evidence. The evidence was abundantly sufficient to raise the issue, and, unless the giving of the charge was fundamental error because it submitted an issue not made by the pleadings, the error has been waived, and cannot be urged in this court as a ground for reversal. This is so for the reason that the charge was not objected to in the trial court as required by chapter 59 of the Acts of the Thirty-Third Legislature, and the point reserved by proper bill of exceptions. Johnson v. Hoover & Lyons, 165 S. W. 900. It is stated in the brief that the charge was "duly excepted to," but an examination of the bill of exceptions referred to in verification of this statement discloses that, while the charge was objected to on the ground that the issue therein submitted was not raised by the evidence, it was not objected to on the ground that it submitted an issue not made by the pleadings.

[9] We are inclined to the opinion, however, that, if the giving of the charge was error because the issue thereby submitted was not raised or made by the pleadings, such error was fundamental, and could be urged in this court without objection having been made to the charge in the trial court. Railway Co. v. Vieno, 26 S. W. 230, and cases cited; Railway Co. v. Lackey, 12 Tex. Civ. App. 229, 33 S. W. 768.

[10] But did the charge submit an issue not made by the pleadings? The only allegations of the petition upon which the charge could be predicated are as follows:

"The defendants failed to exercise proper care as required by law to furnish plaintiff a safe place in which to work, in this that the scaffold upon which plaintiff was placed to work and upon which he had to work was weak and insufficient for the purpose for which it was used, and not sufficiently nailed or braced to hold the weight of the workmen required to work thereon, and by reason thereof the same gave way, and plaintiff was caused to fall."

Here it is alleged that the appellants failed to furnish appellee a safe place in which to work, in that the scaffold upon which plaintiff was placed to work was weak and insufficient for the purpose for which it was used, and we conclude the allegations were sufficient to raise the issue and authorize the admission of evidence showing that appellants negligently failed to furnish appellee and his colaborers proper and suitable material with which to construct the scaffold. The pleading was doubtless imperfect, tested by a special demurrer charging that it was not sufficiently specific, in that it did not state wherein or in what respect the scaffold was weak, but was not, we think, obnoxious to a general demurrer. The record does not show that either a general or special demurrer was urged to the pleading, nor does it show that any objection was interposed to the introduction of the evidence offered in support thereof. A fair interpretation of the pleading forbids the construction that the language "that appellants failed to furnish appellee a safe place in which to work, in that the scaffold was weak and insufficient for the purpose for which it was used," referred to and meant that it was weak and insufficient for that purpose, because insufficiently or insecurely nailed. On the contrary, we think it is manifest that the pleader intended to charge that the scaffold was insufficiently nailed to hold the weight of the workmen, and also that it was "weak and insufficient" in other respects. We think the pleading, in the absence of a special exception thereto, and the overruling of such an exception, sufficient to admit proof of the issue submitted thereunder in the court's charge; that is, proof that the scaffold was

"weak and insufficient," for the reason that the material furnished by appellants and used in its construction was wet and spongy, and hence did not afford appellee a reasonably safe place in which to perform the work required of him, and the assignment will be overruled. This also disposed of appellants' eighth, ninth, eleventh, twelfth, and thirteenth assignments of error against them.

[11, 12] The other assignments show no reversible error. The fourteenth, complaining that the court erred in permitting "plaintiff's counsel in examining the jury on their voir dire to ask each of them whether they had any stock in an employers' liability insurance company or were in any way interested in or connected with any employers' liability company insuring contractors against loss or injury in the process of their work, and erred in overruling exceptions of these appellants reasonably interposed to such questions and the answers of the jurors thereto," does not present the same question that was presented in the case of Harry Bros. v. Brady, 86 S. W. 615, decided by this court, and like cases, and is therefore distinguishable from those cases in the facts, and not ruled thereby. The case at bar is more like the case of Dow & Co. v. Morgan (Ky.) 96 S. W. 533, in which it was held that it was not error to permit a juror to answer a question very similar to the one asked and answered here. Besides, it does not appear that appellants were in any wise injured by the testimony. Rule 62a (149 S. W. x).

The verdict of the jury is sustained by the evidence, and, no reversible error appearing, the judgment is affirmed.