## FELIX MANN v. DUBLIN COTTON OIL COMPANY.

Decided March 22, 1899.

1. **Contract—Release of Sureties.**

The unauthorized act of the purchasers under a contract for the delivery of cattle at a certain place, where they were to be weighed and the price determined thereby, in shipping the cattle when tendered at that place, to another point, and there weighing them, was such a departure from the original contract as to release sureties of the seller from their liability for his compliance with his agreement.

2. **Same.**

Sureties for the seller's compliance with an executory contract of sale on which part payment was advanced, the balance to be paid on delivery, can not be held for money paid before delivery in excess of the amount to be so advanced under the contract.

3. **Sale—Tender.**

The unauthorized act of the purchaser in shipping cattle when delivered by the seller at the point provided in the contract for delivering and weighing them to determine the price, to another point, and having them weighed there, will not release the seller from his obligation to deliver the remaining number of cattle called for by the contract, where the parties had treated the contract as divisible. But the seller was entitled to credit for the value and weight of the cattle delivered, at the point fixed by the contract.

APPEAL from Brown. Tried below before Hon. J. O. WOODWARD. For rulings of Supreme Court in this case upon certified questions, see 92 Texas, 377.

*Jenkins & McCartney, W. A. Wright,* and *G. H. Garland,* for appellant.

*Goodwin & Grinnan,* for appellee.

FISHER, CHIEF JUSTICE.—This is a suit by the appellee, the Dublin Cotton Oil Company, against Felix Mann and his guarantors, Wm. Bevans and W. W. Lewis, for a breach of the following contract:

*"The State of Texas, County of Menard.*—This contract, made and entered into this 3d day of September, 1894, by and between Felix Mann, of said county and State, party of the first part, and G. H. Connell, of Erath County, Texas, party of the second part, witnesseth:

"That said Felix Mann has this day contracted and sold to said G. H. Connell one thousand five hundred head (1500) of three (3) and four (4) year old steers and up (about one thousand head of said cattle to be four years old and over). Said cattle to average in weight not less than eight hundred pounds per head, and to be good, smooth, merchantable cattle, of good style, shape, and in good condition, and branded N thus; and said cattle to be cattle raised in Menard and adjoining counties, to be passed upon as to style, age, and quality at said Felix Mann's ranch in Menard County, Texas, between the 10th and 25th days of October, 1894; said Felix Mann to give said G. H. Connell notice of the time when said cattle will be ready to be passed upon, in time, so that the said Connell or his agent or representative may be present.

"And the said Felix Mann agrees to deliver said cattle on board the cars at Brownwood, Texas, between the 20th of October and the 1st of November, 1894. Said cattle to be penned at Brownwood one night without feed or water, the night before being weighed.

"And the said G. H. Connell hereby agrees to pay for said cattle two and one-eighth (2⅛) dollars per one hundred pounds.

"Ten thousand dollars ($10,000) of the value of said cattle has this day been paid by the said G. H. Connell to said Felix Mann, receipt of which is hereby acknowledged by the said Felix Mann, and the said G. H. Connell hereby agrees to advance to said Felix Mann, on said cattle to be delivered as aforesaid, the further sum of five thousand dols. ($5000) on September 15th, 1894; and five thousand dollars on October 1st, 1894, and the balance of said money for said cattle on receipt of said cattle, as aforesaid, on the cars at Brownwood, Texas. Witness our hands, this the day and date above written.

"FELIX MANN,<br>"G. H. CONNELL.

"Witnessed by L. W. Ainsworth, W. E. Adkins.

"We hereby guarantee the fulfillment of the above and foregoing contract for and on the part of Felix Mann, this 3d day of September, 1894.

"WM. BEVANS,<br>"W. W. LEWIS."

Verdict and judgment in the court below went against the defendants for the sum of $5153.

We find the following facts: That the appellant Felix Mann and one

G. H. Connell, on the 3d of September, 1894, made and entered into the contract as above stated. On September 18, 1894, G. H. Connell transferred the contract to the appellee, the Dublin Cotton Oil Company, and at that time and thereafter Connell was the agent of the Dublin Cotton Oil Company, and that thereafter, in all of his conduct relating to any question connected with the contract or the cattle delivered thereunder, he was authorized to and was acting as the agent of the appellee.

In the latter part of October or the early part of November, 1894, Connell passed upon 1107 head of cattle which Mann agreed to deliver under the contract in question. Nine hundred and seventy head of these cattle were purchased by Mann from Shannon and Westbrook, but at the time it was understood that the absolute title to these cattle would not be transferred to Mann until certain checks delivered by Mann to Shannon and Westbrook were paid; but the cattle were delivered to Mann, and they, with the other cattle, making the total number 1107 head, were driven by the employes of Mann to the city of Brownwood, Brown County, for the purpose of being delivered to the appellee or its agent Connell.

On the contract in question, Connell paid to Mann the full sum of $20,000, the amount which he agreed to pay before the delivery of the cattle. The checks given by Mann to Shannon and Westbrook in payment for the 970 head of cattle purchased from them were not fully paid, and Shannon and Westbrook were preparing to assert their claims in the cattle in question and take steps to recover the same, when Connell, acting for the appellee, paid into the San Angelo National Bank to the credit of Felix Mann the sum of $5000. Shannon and Westbrook then executed to Connell a bill of sale for the cattle; and in this connection we find that the effect of this transaction between Connell, Shannon, and Westbrook and the San Angelo National Bank was an advancement by Connell for the plaintiff to Felix Mann of the sum of $5000 on the contract in question, in order that the cattle might be released from the claim of Shannon and Westbrook and delivery made thereof to the plaintiff under the contract with Mann. It is unnecessary for us to set out all the facts in the record leading us to this conclusion, but such effect, we think, should be given to this transaction. In other words, that Connell or the plaintiff acquired no title to the cattle in question as against Mann, but the $5000 was an additional sum advanced by them to Mann, so that the cattle could be released from the claim of Shannon and Westbrook. The advancement of this sum made a total amount paid to Mann on the contract of $25,000.

In the early part of November the cattle reached Brownwood, and Connell was notified of their arrival, and the appellant Mann sent to Brownwood one James White, who was authorized to have the cattle in question weighed; and sent by him a letter to Connell to this effect: "The bearer, James A. White, will represent me in weighing my cattle. Yours truly, (Signed) Felix Mann." This was all the authority White had from Mann. This letter was delivered by White to Connell.

There were no suitable scales at Brownwood upon which to weigh the cattle, and a day or so after they arrived at Brownwood they were by White and Connell caused to be moved therefrom to the town of Dublin, which was about fifty miles distant, for the purpose of being weighed. They were carried to Dublin on the Fort Worth & Rio Grande Railway. After they reached Dublin they were weighed, and the cattle delivered and turned over to Connell, as appellee's agent.

It is true that Connell states in his evidence that he was not a party to removal of the cattle from Brownwood to Dublin and protested against the same; but his conduct in connection with the removal clearly makes him a party thereto. He furnished the cars in which the cattle were moved, and the evidence shows that they were billed to the plaintiff, and he accompanied White with the cattle from Brownwood to Dublin, and at the time they were weighed he appointed an agent to take down the weights and to assist in weighing them, and when weighed they were delivered to him and were received by him. In fact, the only reasonable conclusion that can be reached from the evidence bearing upon this question is that Connell, as the agent of the appellee, was a party to the removal of the cattle from Brownwood to Dublin.

We find that the contract in question provided for the weighing of the cattle at Brownwood, and that this was intended as an important stipulation in the contract. We also find that neither Mann nor his guarantors, Bevans and Lewis, were parties to the removal of the cattle from Brownwood to Dublin; nor did they know of or consent thereto; and we also find that neither Lewis nor Bevans consented to Connell advancing for Mann the additional sum of $5000, the amount paid to Westbrook and Shannon over and above the $20,000 agreed to be paid to Mann prior to the delivery of the cattle.

The cattle, according to their weights at Dublin, weighed 931,435 pounds, and their value, according to the contract price per hundred as stated in the contract, was $19,793.

We also find that Mann has never delivered to Connell or the appellee the remainder of the 1500 head called for in the contract, to wit, 393 head.

In view of the contention of the appellee that the guarantors, Lewis and Bevans, can not now urge their discharge, because they were indemnified by Mann, we deem it important to make some finding upon this question. Therefore, we find from the facts stated in the record that no such indemnity was shown as would estop Lewis and Bevans from urging their discharge as guarantors.

There is a conflict in the evidence as to what effect the removal of the cattle from Brownwood to Dublin had upon their weight; and there is a like conflict in the evidence as to what the cattle would have weighed at Brownwood; and we find from the contract that the value of the cattle should be determined by their weight at Brownwood.

*Conclusions of Law.*—1. At a former day of this term we certified to the Supreme Court the question whether White, as the agent of Mann,

was authorized to remove the cattle from Brownwood to Dublin for the purpose of being weighed. In response to that question, the Supreme Court said that the letter authorizing White to have the cattle weighed did not confer upon him the authority to move them to Dublin for that .purpose.

Now, if White was not authorized to move the cattle to Dublin, then it becomes necessary to determine what was the effect of the conduct of plaintiff, through its agent Connell, with the removal, upon the rights of appellants, Bevans and Lewis, as guarantors. It is clear that the stipulation in the contract providing for weighing the cattle at Brownwood was an important one, as the parties to the contract had selected this as the means of determining what price Mann should be paid for the cattle; and it is clear that neither of the parties would have the right to violate this provision of the contract or to change the method of performance in this respect, as provided for, without the consent of the other. None of the appellants consented to this change. Then the effect thereof would be to discharge the guarantors, provided the plaintiff was a party to the breach or change of the contract in this particular. The findings of fact upon this subject virtually dispose of this question in favor of the guarantors. While it is true White had no authority to move the cattle, and his conduct with reference thereto may be considered the unauthorized act of a stranger, which might not within itself operate as a release of the guarantors, but when this conduct was participated in by the plaintiff, through its agent Connell, the plaintiff became a party to the unauthorized act and change in the manner of performance; and consequently in reason should be made to suffer the consequences legally resulting from a change in the contract or the manner of its execution in some material respect, without the consent of the sureties or guarantors thereof.

From these remarks the conclusion evidently follows that the guarantors, Lewis and Bevans, were released in toto. Further, while on this subject, it may be well to state that in no manner can they be held bound for the payment made by Mann of the $5000 to Westbrook and Shannon. The contract provided that before the delivery of the cattle Connell was only authorized to pay Mann the sum of $20,000, and this additional $5000 was paid to Mann before cattle were received representing this additional amount. This payment was premature under the contract, and was clearly in excess of the value of the cattle received. Consequently it was a breach of the contract in this respect as to the guarantors, and they could not be held bound therefor.

Holding that the guarantors are released relieves us of the necessity of passing upon the plea to the jurisdiction of the court or their plea of privilege to be sued in the county of their residence. And it is well here to state that in our opinion the evidence in the record on the subject of the guarantors receiving an indemnity from Mann authorizes the conclusion that they are not estopped or precluded from insisting upon their release.

2.   The next question to be determined is what effect the breach of the

contract in removing the cattle to Dublin had upon the rights of the appellant Mann or in what manner it affected his liability. We do not believe that the breach was of such a character as would release him from delivering the balance of the cattle called for in the contract, to wit, 393 head. It is a familiar rule of law that where a contract is entire, a breach of it in some material respect will release the other party from further performance; but such is not the rule generally where the contract is divisible; and if the contract is of that nature and the breach does not go to the entire consideration, but simply arises from a violation of it in some material respect, which might be compensated for in damages, the rule is to relegate the injured party to his action for damages, and hold him to its further execution or performance. The contract in question, as originally executed, might be construed as entire in its nature, for it calls for a certain number of cattle at a certain price, and possibly neither party could have been required to render a full performance upon a partial tender by the other; but it is evident from the facts of the record that the parties treated the contract as divisible. Mann delivered and Connell received less than the entire number of cattle called for, and there was no agreement whatever waiving the delivery of the balance. The parties evidently treated the delivery of 1107 head as a partial performance of the contract; and there is nothing in the record that would indicate that they intended that Mann should not deliver the remaining 393 head.

The damages sustained by Mann by reason of the breach of the contract in removing the cattle from Brownwood to Dublin was a small item in proportion to the entire consideration involved in the transaction. The damages in such a case would be the loss in weight of the cattle by reason of the removal, based upon the contract price of the cattle at Brownwood. The loss in this respect could be easily ascertained. Our conclusion upon this subject is that the breach of the contract growing out of the removal of the cattle to Dublin did not release Mann from delivering the balance of the cattle.

3. In view of the construction we have placed upon the contract, the value of the cattle received by the plaintiff should be determined by what the evidence may show to have been their weight at Brownwood on the day they were removed to Dublin. Mann was entitled to compensation at the contract price per hundred pounds according to what they may have weighed at Brownwood; and this right could not be defeated by the plaintiff's undertaking to force upon Mann the weight of the cattle at Dublin; and if the cattle deteriorated in value or weight by reason of the removal to Dublin, plaintiff would be responsible to Mann therefor; and in determining the character of judgment to be rendered upon this subject, the plaintiff is entitled to the difference between the sum of $25,000, the amount paid Mann, and the value of the 1107 head of cattle delivered at Brownwood, together with interest on that amount at the legal rate from the day that the cattle were carried to Dublin.

The plaintiff would also be entitled to judgment for the profits, if any,

it lost by reason of the refusal of Mann to deliver the remaining 393 head of cattle, and interest upon this sum at the legal rate from the time the cattle should have been delivered.

4. It is clear that the conclusions we have reached virtually settle the case, with some few questions left open with reference to amounts to be ascertained by the trial court. Therefore, the judgment below is reversed with instructions to the trial court as follows:

Judgment should be entered, discharging and releasing the guarantors from liability, with costs in their favor.

The trial court shall ascertain the weight of the 1107 head of cattle and their consequent value under the contract price at Brownwood on the day they were removed to Dublin; and upon the $25,000 paid Mann, shall give him credit for the value of the cattle, and judgment for the difference shall be rendered in plaintiff's favor against Mann, with interest at the legal rate from the day upon which the cattle were moved from Brownwood. To also render judgment in plaintiff's favor for the damages sustained, if any, by the plaintiff, by reason of the failure and refusal of Mann to deliver the remaining 393 head of cattle, with interest on that amount from the time the evidence may show they should have been delivered at Brownwood. The damages, if any, as to this item are to be arrived at from what the evidence may show to have been the weight of the classes of cattle called for in the contract, according to the contract price at Brownwood, and the difference in the market value of such cattle at that place at the time when they should have been delivered. The court below will render judgment in accordance with the instructions given in this opinion.

The disposition that we make of the case relieves us from passing upon many of the questions raised in the briefs.

*Reversed, with instructions.*

Writ of error refused.