## GORDON JONES CONST. CO. v. LOPEZ.
### (No. 5321.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 11, 1914. On Motion for Rehearing, Feb. 3, 1915.)

1. MASTER AND SERVANT (§ 288\*)—INJURIES TO SERVANT—ASSUMED RISK.

Where plaintiff, while assisting in taking down a wall, stepped on a plaster of paris cornice or molding, which, breaking off, precipitated plaintiff to the earth below, the danger of stepping on the cornice was not, as a matter of law, as open and apparent to plaintiff as to defendant's vice principal, nor so open and apparent that a man of ordinary prudence would not have stepped on it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.\*]

2. MASTER AND SERVANT (§ 278\*)—INJURIES TO SERVANT—PLAN—EVIDENCE.

On an issue as to whether a master has provided a reasonably safe plan for doing the work in which the servant has been injured, evidence of the use of the same method by other persons engaged in the same business, while admissible, is not conclusive.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.\*]

3. MASTER AND SERVANT (§ 278\*)—INJURIES TO SERVANT — METHOD OF WORK — SAFE PLAN.

Where a servant was injured while assisting in taking down a wall, proof that the plan adopted by defendant was the one commonly used by persons engaged in the business, and there was no showing that any person ever used a different method, did not establish, as a matter of law, that defendant used reasonable care to adopt a safe method of doing the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.\*]

4. MASTER AND SERVANT (§ 296\*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

An instruction that, on the issue of contributory negligence, the jury might consider all the circumstances in evidence, including plaintiff's experience, in determining whether plaintiff acted as a person of ordinary prudence, was not erroneous, though it is not approved.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.\*]

5. MASTER AND SERVANT (§ 286\*)—INJURIES TO SERVANT — LATENT DEFECTS — QUESTION FOR JURY.

Where a servant was injured by the fall of a cornice, and there was some proof that the wall itself gave way under his foot, causing his fall, defendant was entitled to have the issue of latent defects in the wall submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant. Cent. Dig. §§ 1001, 1006, 1008. 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.\*]

6. TRIAL (§ 349\*)—SPECIAL ISSUES—SUBMISSION—SPECIAL CHARGES—REFUSAL.

The trial court is not justified in refusing a request to submit the case on special issues merely because at the same time requests were made for the giving of special charges.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 823–827; Dec. Dig. § 349.\*]

7. TRIAL (§ 352\*)—SPECIAL ISSUES—SUBMISSION.

A request to submit a case on special issues may not be properly denied because defendant did not accompany its request with a copy of the special issues desired submitted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 840–842, 844, 845; Dec. Dig. § 352.\*]

8. TRIAL (§ 349\*)—SPECIAL ISSUES—SUBMISSION.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, providing that the court, on the request of either party, shall submit the cause on special issues, it was prejudicial error for the court to refuse such a request because the case was so submitted at a prior trial, and the jury failed to agree, due, as the court thought, to the involved character of the issues necessary to be submitted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 823–827; . Dec. Dig. § 349.\*]

9. APPEAL AND ERROR (§ 1062\*)—PREJUDICE—SUBMISSION OF CASE—SPECIAL ISSUES.

Where the court, by erroneously refusing to submit the case on special issues, deprived defendant of a statutory right, the Court of Civil Appeals could not hold that the error was without prejudice.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.\*]

10. EVIDENCE (§ 512\*)—OPINION—MATTERS OF EXPERT KNOWLEDGE.

Where plaintiff was injured while assisting in demolishing a wall, whether it was safe to put a man on the wall with a crowbar and a hammer related to a matter on which it was unnecessary to submit expert testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2316; Dec. Dig. § 512.\*]

11. TRIAL (§ 108½\*)—ARGUMENT OF COUNSEL—REFERENCE TO INSURANCE COMPANY.

It is error for plaintiff's attorney, in examining jurors on their voir dire, to ask questions which intimate that an insurance company is defending the case.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 108½.\*]

### On Motion for Rehearing.

12. TRIAL (§ 223\*)—INSTRUCTIONS — WRITTEN CHARGE—NATURE AND FORM.

Rev. St. 1895, art. 1316, as amended by Acts 28th Leg. c. 39, § 1, requires the court to

give a written charge to the jury, unless expressly waived by the parties, which charge may be a general one or may be made up of special issues.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 514–516; Dec. Dig. § 223.*]

13. TRIAL (§ 352*)—SPECIAL ISSUES—SUBMISSION—PREPARATION OF CHARGE.

Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, gives to a party the right to have the case submitted on special issues, the charge to be drawn by the court, and, if either party thinks necessary or proper issues have been omitted, he must proceed to have the omission supplied, as prescribed by article 1985.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 840–842, 844, 845; Dec. Dig. § 352.*]

14. APPEAL AND ERROR (§ 832*)—REHEARING—NEW ISSUES—BANKRUPTCY.

Where the fact that appellant had become a bankrupt was not shown by the record, it could not be considered on an application for rehearing.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3215–3228; Dec. Dig. § 832.*]

15. COURTS (§ 247*)—INTERMEDIATE APPEAL—CERTIFICATION TO SUPREME COURT.

Where review by the Supreme Court may be obtained by an application for a writ of error, the Court of Civil Appeals will not certify questions to the Supreme Court for an answer.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 487, 749, 751–754, 757, 759, 760, 762–764; Dec. Dig. § 247.*]

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by Ladislado Lopez against the Gordon Jones Construction Company. Judgment for plaintiff, defendant appeals. Reversed and remanded.

M. J. Arnold, R. S. Cozby, and W. S. Peyton, all of San Antonio, for appellant. J. D. Childs and James W. Brown, both of San Antonio, for appellee.

MOURSUND, J. Ladislado Lopez sued the Gordon Jones Construction Company for damages for injuries sustained by him because of falling from a wall which he was assisting in tearing down while in the employ of said company. He alleged that John Crawford was foreman or vice principal of defendant company, acting as the personal representative thereof, and was overseeing, directing, and controlling the work at which plaintiff was engaged; that Crawford negligently sent plaintiff to work on top of one of the walls, which was then and there being torn down, at a place which was unusual, improper, insecure, and unsafe, and plaintiff was inexperienced in that class of work and did not understand and appreciate the danger attending the same and the means of avoiding same, and could not have discovered the same by the exercise of ordinary care, which ignorance, inexperience, and want of knowledge on plaintiff's part was known by defendant, or would have been known by the exercise of ordinary care, and while plaintiff was engaged in said work, and using due care in stepping from one

place to another upon said wall, he placed his foot upon what seemed to him a part of the top of the wall, which appeared safe to him, for the purpose of walking upon it, but which place was insecure and highly dangerous for any person to walk or work upon because, instead of being a solid wall, it was in fact only a cornice or plastering of mortar insecurely fastened to the wall, and said cornice or plastering gave way from plaintiff's weight when he stepped upon the same and precipitated him to the ground; that defendant gave plaintiff no warning or notice of the defect in the wall, occasioned by such cornice, nor of the danger of walking thereon nor instructions how to avoid the same, and said cornice was in such condition and position and so attached to the wall that plaintiff did not and could not, by the exercise of ordinary care, have discovered the said condition of the same and the danger of stepping upon same, which defendant knew, or by the exercise of ordinary care would have known. By way of a separate count, plaintiff alleged negligence on the part of defendant in failing to furnish him a safe place to work and a safe plan and safe instrumentalities for doing the work; that the work should have been done by means of a temporary scaffold, upon which plaintiff could have stood, or should have used a derrick with a rope, block, and tackle and grabhooks to obviate the necessity of plaintiff's standing upon the wall. In this connection plaintiff's inexperience and lack of knowledge of the dangers incident to the work and of the necessity of using a scaffold or derrick were fully alleged.

Defendant, after his denials of plaintiff's allegations, alleged: That, if the wall was in a dangerous condition, plaintiff created such condition during the progress of his work of tearing it down; that in doing such work the stones would be loosened, and as the material was loosened, and the joists pulled out, new dangers would constantly be presented on account of parts of the wall becoming loose or the footing insecure, and that plaintiff knew this, or in the ordinary discharge of his duties must necessarily have known it, and by the exercise of ordinary care in the discharge of his duties would have known it, and the risks thereof, and therefore he assumed the risks of such dangers. Defendant further pleaded that plaintiff assumed the risk of the work being done in the manner in which it was done, of stepping too near the edge of the wall, of portions of the wall becoming loose, especially near the edges; that he assumed the risk, knew of the defect that caused his fall, and necessarily would have known thereof in the discharge of his duties, together with the attending risks. Defendant further pleaded that plaintiff was guilty of con-

tributory negligence in failing to observe repeated warnings to keep the top of the wall clean and clear of rubbish, in moving about upon the wall in a reckless way in despite of the warnings to be more careful where he was stepping, in failing to keep a proper lookout, and in failing to make a proper inspection to see that the footing was safe before undertaking to walk, in stepping too near or beyond the edge of the wall instead of staying in the middle thereof, and in failing to inspect the wall by looking at it, feeling of it, and striking it with his tools before putting his foot down. Defendant also alleged the defense of latent defect in the wall.

The trial resulted in a verdict and judgment in favor of plaintiff for $5,000.

[1] Assignments 1 and 2 complain because of the court's refusal to give a peremptory instruction in favor of appellant. It is contended that the evidence is insufficient to show negligence on the part of appellant, and further that appellee assumed the risk, as a matter of law. After a careful reading of the statement of facts, we conclude that the assignments should be overruled. Negligence is predicated upon the failure to warn appellee of the danger of stepping upon a plaster of paris cornice or molding. Much of the testimony is not as clear to us as it was to the jury, because upon the trial a "model" of the wall and cornice was exhibited to the jury, and many questions asked with reference thereto, the answers to which furnish us with no light upon the issues in the case. We are unable to say, as a matter of law, that the danger of stepping upon such cornice was as open and apparent to plaintiff as to the defendant's vice principal, or so open and apparent that a man of ordinary prudence would not have stepped upon the same.

Assignments 3 and 4 complain of paragraph 2 of the court's charge, the contention relating to the sufficiency of the evidence, and, as said assignments raise the same question as assignment No. 1, they are overruled.

The fifth assignment is without merit, and is overruled.

[2, 3] By assignments 6 and 7 complaint is made of paragraph 5 of the charge, wherein the issue is submitted whether appellant was negligent in the matter of furnishing a plan or method of doing the work. No objection is made in the sixth assignment to the form of the charge, but the objection is that there is no evidence to justify the submission of the theory of negligence with respect to the method of doing the work. Under our decisions, the real issue is whether the employer has used ordinary care to provide a reasonably safe method or plan of doing the work. Evidence of the use of the same method by other persons engaged in the same business is admissible upon the issue of ordinary care, but such evidence furnishes no conclusive guide in determining the issue. In this case the charge emphasized the question whether the usual method was pursued, when there was no evidence that any person ever used any other method, and, if that was the test, it could be said without further discussion that the issue should not have been submitted. We have carefully considered the evidence and find that it is overwhelmingly to the effect that the plan used by appellant was the one commonly used by persons engaged in the business; but, in view of the witness Blum's testimony, we cannot say, as a matter of law, that appellant used ordinary care to furnish a reasonably safe method of doing the work. The seventh assignment is a contention that the issue should not have been submitted, because, as a matter of law, appellee assumed the risk incident to the plan or manner in which the work was being done. Assumed risk is based upon the theory of actual or constructive knowledge. The evidence does not disclose knowledge on the part of appellee of the dangers incident to stepping upon the cornice, nor that such danger was so open or obvious that, with the experience he had, he can be charged with constructive notice. The sixth and seventh assignments are overruled.

[4] In assignments 8 and 9 complaint is made of the seventh paragraph of the court's charge, which reads as follows:

"In determining the question of contributory negligence on plaintiff's part, under this charge or under the special charges given you, you may consider all the facts and circumstances in evidence before you, including his experience, and determine from those circumstances whether or not the plaintiff acted as a person of ordinary prudence would have acted under the same or similar circumstances."

Appellee cites the case of Hillsboro Oil Co. v. White, 54 S. W. 432, in support of the correctness of the charge of the court. A writ of error was denied in that case. We consider the case as sufficient authority to require the overruling of the assignment, although we do not approve the charge. The special mention of certain matters may induce the jury to consider that the court regards such matters as entitled to great weight. The assignments are overruled.

[5] Assignments 10 and 11 relate to the issue of latent defect in the wall; it being contended that a charge should have been given upon said issue. At first glance it would seem that there is no merit in this contention, in view of the admission of appellant's counsel in their brief as follows:

"The undisputed testimony shows that the wall was strong and solid after the accident and the wall itself did not fall. It is not necessary for us to again quote testimony to show that the wall did not fall and no part of it fell with Lopez."

However, a reading of appellee's own testimony convinces us that it is subject to the construction that the wall itself gave way under his foot, causing his fall. This, it is

true, is contradicted by all the other evidence; still it made an issue which appellant was entitled to have the jury pass upon. The assignments are sustained.

There is no merit in the twelfth assignment of error. The court had fully charged upon the defense, urged by appellant, and besides the special charge was argumentative and might have been taken as an intimation by the court of the sufficiency of the facts therein detailed as a warning with respect to the cornice.

There is no merit in the thirteenth assignment. The witness Brauch only testified to his opinion, and it is apparent that even his opinion waivers between two theories, one that appellee slipped off the wall because it was slanting and the other that he stepped on loose rubbish which caused him to fall.

There is no merit in assignments 14 and 15, and they are overruled.

In the sixteenth assignment complaint is made of the refusal of the court to submit the case upon special issues; appellant having made proper request in due time for such method of submission. The bill of exceptions relating to this matter bears the following qualification:

"The request to submit this case on special issues was refused because on a former trial, wherein the case was submitted on special issues, it was found necessary to submit a very large number of special issues, and the jury failed to agree, for which reason, as well as because of the involved character of the issues necessary to be submitted, the court considered it impracticable to submit the case properly on special issues."

Appellee contends that, as the record discloses that the special charges heretofore mentioned were requested upon the same day as the request that the case be submitted on special issues, we should presume that they were submitted at the same time as such request, and, that therefore the court was justified in refusing such request. The court's qualification to the bill of exception shows his reasons for refusing the request, and we see no reason for indulging the presumption that attorneys requested the giving of special charges before it was determined not to grant their request for submission upon special issues.

[6] If the request and the special charges had been submitted at the same time, we would unhesitatingly uphold a refusal of the special charges if the request was granted, because the case should not be submitted partially upon general charges and partially upon special issues, but we doubt seriously whether the court would have been justified in refusing the request for submission on special issues merely because at the same time requests were made for the giving of special charges.

[7] The further objection is made by appellee that appellant did not accompany his request with a copy of the special issues they desired submitted. The statute does not require this, and the request cannot be ignored because of a party's failure to formulate and request the issues he desires to have submitted. As we conclude that the request was properly made and insisted upon, it becomes necessary to decide whether the court was authorized to deny the same.

[8] Prior to the adoption of article 1984a (Acts 1913, p. 113), it was left optional with the court to grant or refuse a request for the submission of a case upon special issues. The Legislature did not approve of the law as it then stood and enacted article 1984a. The language used in said article is that "the court, upon the request of either party, shall submit the cause upon special issues." This language is mandatory. Railway v. Jackson, 92 Tex. 638, 50 S. W. 1012, 51 S. W. 330. It is, however, contended that the exception which reads as follows:

"Provided that, if the nature of the suit is such that it cannot be determined on the submission of special issues, the court may refuse * * * to do so"

—leaves it optional with the court to submit a case upon special issues, if the court believes it impracticable to submit the case on special issues, because on a former trial, when so submitted, the jury failed to agree, and because of the involved character of the issues necessary to be submitted. Juries frequently disagree, and the fact that a disagreement has occurred furnishes no ground for refusing to submit the case upon special issues. The same may be said of the fact that the issues are involved. In fact, it has always been generally understood that the more complicated the case the greater the necessity for a submission upon special issues.

In the case of Railway v. Jackson, 92 Tex. 638, 50 S. W. 1012, 51 S. W. 330, Chief Justice Gaines said:

"In very complicated cases it greatly promotes the administration of justice to have a jury find specially the facts of a case, and therefore it may have been thought best * * * to require the judge to submit special issues when either party should request him to do so."

The reasons given by the trial court are not submitted by the statute, and such reasons do not show that the case is one which cannot be determined upon the submission of special issues. The trial court evidently construed the exception to the statute as giving the discretion to refuse the request when the court was of the opinion that the case was of such a character that it could more practicably be decided upon a general charge. But we cannot agree with such construction of the statute. If such had been the meaning intended, the Legislature could easily have said so, and we would then be called upon to decide which was the most practicable way of submitting the case. The statute provides plainly that only cases can be excepted which cannot be determined upon the submission of special issues. This saving clause was evidently put in out of an

abundance of caution, and if, as is contended, there be no case which cannot be determined upon the submission of special issues, the supposed exception amounts to no exception at all, and the statute requires all cases to be submitted upon special issues, if request be made as provided thereby. Where a proviso follows and restricts an enacting clause generally in its scope and language, it is to be strictly construed and limited to language fairly within its terms.

"If irrelevant to the enacting clause and meaningless with reference thereto, or repugnant to the body of the act, it has been rejected." Lewis' Sutherland on Statutory Construction, vol. 2, pp. 673, 674.

As we construe the statute, the court erred in refusing the request to submit this case upon special issues. The same construction has been adopted by the Court of Civil Appeals of the Seventh District in the case of Guffey Petroleum Co. v. Dinwiddie, 168 S. W. 439.

[9] We do not feel authorized to hold that depriving defendant of this statutory right was such an immaterial error as to not require a reversal of the judgment. The assignment of error is sustained.

[10] Assignments 17 and 18 relate to questions asked the witness Blum; one being whether to put a man with a crowbar and hammer to tear down the wall of a building of the kind plaintiff was working upon would be an ordinarily safe way of doing the work, and the other being whether it is safe or dangerous, in tearing down such wall, for a man to be put up there with a crowbar and hammer. These questions, we think, relate to a matter upon which it was unnecessary to call in experts, as the jury could be put in possession of all the facts necessary to arrive at the conclusion for themselves. Shelley v. City of Austin, 74 Tex. 612, 12 S. W. 753. However, we would not reverse the case for this error.

[11] Assignments 19, 20, and 21 complain of questions asked the jurors by one of the attorneys for appellee upon their voir dire examination, and assignments Nos. 22, 23, 25, 26, 27, 28, and 29 complain of certain statements made by said attorney in his closing argument to the jury. Assignment 30 complains of the overruling of a motion to withdraw the case from the jury and impanel a new jury or postpone the case; such motion being based upon the proceedings complained of in the other assignments of error. In order to keep this opinion from becoming too lengthy, we will consider all of these assignments together. Appellant objected in each instance upon the ground that such question or statement was calculated to injure the defendant "by imparting the information or suggestion to the jury that there was an insurance company back of the case." We have given these assignments of error careful consideration; and although fully appreciating the ingenuity and ability of attorneys for appellee, in seeking to explain away or at least minimize the matters complained of, we conclude that the said assignments, taken together, show such an indulgence in statements calculated to apprise the jury of the fact that appellant was carrying indemnity insurance as to require a reversal of the case. This is a close case upon the facts; in fact, the record discloses that one jury failed to agree upon a verdict; and, under the decisions of this court and other courts of this state, it is well settled that an intimation to the effect that an insurance company will have to pay the judgment may be sufficient to turn the scales against the defendant. Lone Star Brewing Co. v. Voith, 84 S. W. 1100; Beaumont Traction Co. v. Dilworth, 94 S. W. 356; Harry Bros. v. Brady, 86 S. W. 615; Houston Car & Machine Co. v. Smith, 160 S. W. 436 (writ of error denied by Supreme Court); Carter v. Walker, 165 S. W. 486; City of Austin v. Gress, 156 S. W. 536; Levinski v. Cooper, 142 S. W. 962. In this case the court, as shown by the bill of exceptions, three times compelled the attorney to desist from asking the jury certain questions. It is also shown that the court several times intervened and tried to restrain the attorney from making objectionable statements in his argument, with the result that a colloquy finally ensued between the court and said attorney, which further emphasized the objectionable statements.

We find a great diversity of opinion among judges in regard to the extent to which an examination of jurors may be conducted in testing their qualifications. There is no doubt that the right exists to ascertain whether any of the jurors own stock in or are employed by an insurance company writing employés' liability insurance in cases in which a party to the suit carries such insurance; but this may ordinarily be done by questions in which the word "insurance" is not even mentioned. It may take more time, but courts will always grant the necessary time when they see that the object of the attorney is to get the information in a way such as will not carry any intimation that the other party is protected by indemnity insurance. The direct question whether any of the jurors are employed by or in any way interested in any employés' liability insurance company insuring contractors against loss or injury in the process of their work may be amply sufficient to intimate that an insurance company is behind the contractor in the case. In cases of this character, it would be well for attorneys to examine each juror separately, and by interrogating him as to his occupation, past and present, ascertain whether he is or has been employed by a casualty insurance company, and by general questions ascertain in what companies or corporations he owns an interest. If it be desired to probe his acquaintance

with employés of the indemnity insurance company, their names can ordinarily be ascertained and the jurors asked if they are acquainted with such persons. No rules can be laid down which will apply to every case, as the questions necessary to probe the bias or prejudices of jurors are dependent upon the facts which give rise to the belief that there may be a bias or prejudice; but, as attorneys know the importance of having a case tried solely upon its merits, they must exercise both caution and good faith to keep out prejudicial extraneous matters. Whether induced by thoughtlessness or by a willful desire to reap a benefit, when extraneous prejudicial matters of such a character as to make it probable that the verdict was influenced thereby are injected into a trial by a party or his attorney, the courts uniformly recognize that justice requires the verdict to be set aside. Appellee contends that under rule 62a these assignments would not call for a reversal; there being no injury shown. We fail to see how injury could actually be shown by such statements or even by the most prejudicial testimony, unless each juror was put upon the stand and examined to ascertain whether such matters entered into his verdict. Our courts have not gone to that extreme in dealing with erroneous proceedings, and still hold that a reversal is proper, when in their judgment an error was of such character that it probably caused or was a material element in causing the result arrived at.

Assignments 24 and 31 are overruled. We do not think either assignment shows reversible error, but at any rate No. 31 relates to an incident which will not occur upon another trial.

Many objections have been made to the consideration of assignments of error; but, as we believe the assignment complaining of the failure to submit the case upon special issues to be well taken and properly briefed, we have considered all other questions which are likely to arise upon another trial.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

The request for submission upon special issues stands upon a different footing from charges, and, even when it was unnecessary to except to the giving or refusal of charges, it was necessary to except to the failure to submit a case upon special issues. G., H. & S. A. Ry. Co. v. Cody, 92 Tex. 632, 51 S. W. 329.

[12] Since the amendment of article 1316, made by Acts 1903, p. 55, c. 39, the court must give a written charge, unless it is expressly waived by the parties. The written charge may be a general charge, or it may be made up of special issues. If appellee's contention be correct, that the court may deny a request to submit on special issues,

unless it is accompanied with the issues in writing which the party wants submitted, it would follow logically that, unless such issues are correctly drawn, the court could refuse the request for that reason. If not, then any kind of a special issue in writing accompanying the request requires the court to submit on special issues, and, if not satisfied with the issue or issues so presented, he would have to frame appropriate issues. We cannot believe that the law places the burden upon the attorney to draw the charge for the court if he wants a case submitted upon special issues. Appellee contends that article 1984a (Vernon's Sayles' Statutes) should be construed in connection with article 1985, which provides that the failure to submit any issue shall not be deemed a ground for reversal, unless its submission has been requested in writing, and that, when the articles are construed together, the result follows that no reversal shall take place for failure to submit the case upon special issues, unless written issues accompany the request. The Supreme Court has left open the question whether article 1985 requires the issue to be drawn or merely requires the request to submit a certain issue to be in writing. Moore v. Pierson, 100 Tex. 117, 94 S. W. 1132. But if it be held that article 1985 places omitted issues upon the same footing as omissions from a general charge, and that the desired issues omitted by the court must be correctly drawn and presented, it does not follow that a request going to the manner in which the court shall submit the case must be accompanied with written issues of some kind to make it valid, or written issues correctly drawn.

[13] We construe article 1984a as giving the party the right to have the case submitted upon special issues, and the court must draw his charge. If either party thinks necessary or proper issues have been omitted, he must proceed under article 1985 to have the omissions supplied.

We are still of the opinion that this case is not one which cannot be determined upon the submission of special issues, and we do not feel authorized to read into the proviso any language which would vest a discretion in the trial court to refuse to submit a case upon special issues which can be determined in that manner. The Legislature intended to change the law, and we must give effect to such intention.

We conclude that assignment No. 10 should be overruled, because the special charge upon which it is based was defective, which defect was not pointed out in appellee's brief and overlooked by us.

[14] Appellee's motion for rehearing opens with a discussion of the fact that appellant has gone into bankruptcy—a fact not shown by the record, and which should not be mentioned by appellee, as it can have no bearing upon the legal questions before us.

[15] Appellant asks us to certify the ques-

tions in this case to the Supreme Court. As a direct appeal is open to the Supreme Court by means of application for writ of error, we see no good reason for complying with the request. Magill v. Brown Bros., 20 Tex. Civ. App. 678, 50 S. W. 143, 642; Sullivan Sanford Lumber Co. v. Reeves, 125 S. W. 96.

The motion for rehearing is overruled, except as to our disposition of assignment of error No. 10.