GREEN v. LIGON.

No. 14719.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 26, 1945.

Rehearing Denied Dec. 7, 1945.

Raymond E. Buck and George C. Kemble, both of Fort Worth, for appellant.

Hal S. Lattimore and J. Rob Griffin, both of Fort Worth, for appellee.

SPEER, Justice.

This suit was instituted by Tom Ligon for himself, and as next friend for his five year old daughter, Yvonne Ligon, against W. B. Green, on account of injuries sustained by the child and the consequent expenses incurred and to be incurred by the father in hospital, medical, nurses, and ambulance bills and for loss of time and wages sustained and to be sustained by the father, Tom Ligon.

Allegations are made that the driver of a station wagon belonging to Green, while in the discharge of his duties as an employe, negligently struck and ran over Yvonne Ligon; that she thereby suffered serious and permanent injuries. There were further allegations of the items of expense incurred and to be incurred by the father, Tom Ligon, because of the injuries sustained by the child. Allegations were made of eight instances of negligence of the driver of the station wagon claimed to be proximate causes of the accident and injuries to the child and the damages to the father.

Defendant Green answered generally denying all the allegations of plaintiff's petition and specially that the driver of the car was acting in a careful and prudent manner at the time the child was struck and set out five instances in which it was asserted that Yvonne Ligon was guilty of contributory negligence which were proximate causes of the injuries sustained by her.

At the conclusion of taking testimony defendant Green filed a motion for an instructed verdict in his behalf and gave numerous reasons therefor, among which it was claimed that there was no negligence shown upon the part of his employe and that all injuries sustained by plaintiffs were proximately caused by the contributory negligence of the child Yvonne Ligon, as a matter of law. This motion was "refused" by the court.

Special issues were submitted to the jury, and the verdict was favorable to the plaintiffs.

After verdict was returned defendant Green filed his motion for judgment non obstante veredicto upon the grounds that the court should have granted his motion for a directed verdict; that the court should disregard the jury's answers to special issues 4, 5, 6, 7, and 9. In his motion he asserts that there was no testimony of probative value to authorize the submission of any of said issues. The motion was "refused and denied" by the court and judgment was entered for plaintiffs for the aggregate sum of $5,000, apportioned $3,000 to Yvonne Ligon and $2,000 to Tom Ligon. Defendant's motion for a new trial was overruled, and he has perfected his appeal.

Appellant Green presents thirteen points of error, but because of the disposition we have concluded should be made of this cause, we shall not discuss each of the points in detail.

The testimony discloses that defendant Green was a florist and employed Scott Sayers to drive his station wagon to deliver flowers; that Sayers was 16 years old, had a driver's license and was engaged in his master's business when the accident happened; that Yvonne Ligon, the injured child, was five years old. The court gave in his charge the usual definition of negligence as applicable to the driver of the car. Relating to Yvonne Ligon, the court charged: "Negligence, as to Yvonne Ligon, is the failure to use that care which a person of ordinary prudence, of the intelligence, experience, capacity and discretion of Yvonne Ligon would use under the same or similar circumstances."

Points one and two assign error because the court refused to give appellant's request for a peremptory instruction, based upon the contentions that the testimony failed to show negligence by the driver of the car and that it affirmatively appeared that Yvonne Ligon was guilty of contributory negligence as a matter of law, proximately causing her injuries. If the testimony raised fact issues on these points, of course, no peremptory instruction should have been given. We shall refer to some of the testimony in this connection under the next point raised.

Third point assigns error because the court declined to enter judgment for appellant notwithstanding the verdict. It is contended that there was no testimony authorizing the submission of the issues upon which the jury had returned its verdict. Appellant points out the issues and answers complained of. They are Nos. 4 and 5 relating to the negligence of the driver of the car in failing to turn the car to his left; Nos. 6 and 7 relating to the speed of the car immediately prior to the accident; No. 10 relating to the child's failure to keep a proper lookout; No. 13, which relates to the child's negligence in attempting to "jay-walk" across the street; and No. 15, inquiring if the child was negligent in attempting to cross the street in front of a parked car. Appellant asserts that there is no testimony to support the jury verdict in response to the above inquiries. The numbered issues referable to the negligence of appellant's driver are in pairs because negligence and proximate cause were found in those instances and

the issues concerning the child are single because negative answers were given.

In response to first special issue the jury found that the driver of the station wagon did not fail to keep a proper look-out. Under issue No. 4, one of those here complained of, it was found that the driver was negligent in failing to turn his car to the left just prior to the time he struck the child, and by No. 5, that his failure to do so was a proximate cause. The driver testified that he did not turn to the left because he did not see the child. He also said he was driving about 15 miles per hour; that if he had seen her he could have stopped "instantly" or could and would have turned left within the space of about five feet, that in either event he would not have hit her. There was a parked car close to the place of collision; it was facing north, the direction the driver was going. The driver said he had heard children playing and "yelling," as if calling someone, quite a distance before he reached the parked car; he said he looked for the children and saw them on a lawn to his left; he also saw the parked car. The testimony is conflicting as to the distance from the front of the parked car to where Yvonne was struck; various estimates ranged from 3 or 4 to 12 or 15 feet. Under the driver's testimony, he would have missed her if he had seen her as much as five feet away—he said he did not see her and there is no intimation by anyone that he did. The jury found that the driver was keeping a proper look-out, thus acquitting himself of negligence in this respect. By the answer to issue 4, the driver is convicted of negligence for having failed to turn his car to the left and thus avoid striking the child. If, as found by the jury, he was keeping such look-out as an ordinarily prudent person would have kept under the circumstances, and did not see the child, it is difficult to understand why the jury found in response to issue 4 that an ordinarily prudent person would have turned his car to the left and missed a child he had not seen, by the exercise of such care as the law imposed upon him. The jury also found that it was not an unavoidable accident. However, even if the answers to issues 4 and 5 could or should have been disregarded by the court on appellant's motion, the answers to issues 6 and 7 would sustain the court's ruling.

Special Issue No. 6 reads: "Do you find from a preponderance of the evidence that the operation of the station wagon at the rate of speed which you may believe and find it was being operated at the time of and immediately prior to the accident to Yvonne Ligon was negligence (as that term is defined for you with reference to the driver of the station wagon)?" The answer was "Yes." By answer to the 7th issue it was found to be a proximate cause. Appellant objected to the submission of issue No. 6 because (a) there was no pleading to authorize it; (b) it embraced two questions requiring a single answer; and (c) there was no testimony upon which to base the issue as submitted. As one of the acts of negligence by the driver, it was alleged that: "The driver of the truck was driving the truck at a dangerous and excessive rate of speed at the time and under the circumstances in question." No exception was urged to the pleading, in the absence of which if there was evidence to justify, the issue should have been submitted covering the allegation. The inquiry made by the issue submitted is much broader than the allegation, and we think objectionable upon other grounds. It will be observed that this was not an inquiry of whether the driver was violating a state law or City Ordinance, but one in the nature of a common law right of the injured party. In such circumstances the rate of speed at which one may be driving cannot be measured in miles per hour, in arriving at an answer to the question; but broadly speaking, it was an allegation that he was driving too fast "under the circumstances" surrounding the incident. He testified that he did not see the child; we know he struck her; he said he was driving 15 miles per hour, and no one said anything to the contrary; if he had seen her, he said he could have stopped "instantly" or could have turned to his left within five feet, and that in either event he would have missed her; that at the point of the accident he said: "Well there was a bump, kind of sounded like a board or something had hit the car on my right bumper, and I went on a couple of houses and looked back through my rear-view mirror and saw the little girl lying there." He said he could see the parked car but never did see the child; he stopped and went back to the house where the child had been taken after she was struck. What we have already said concerning the distance the child was from the parked car and the fact that he had heard children playing and

calling, and saw the children on the left, just across the street from where Yvonne was struck, leads us to believe that there was evidence sufficient to warrant the court in submitting a proper issue or group of issues to ascertain the jury's findings of fact concerning them as was attempted by the trial court. Apparently the defendant did all he could in the way of objecting to the manner in which the inquiry was made. It was an offensive issue, essential to plaintiff's recovery and the defendant had no obligation to tender a substantially correct issue or group of issues presenting the point. Rule 279, Texas Rules Civil Procedure. We think under the circumstances the court should not have disregarded the answer to Special Issue No. 6, even though it was erroneously submitted and entered judgment for defendant non obstante veredicto.

■■■ In connection with defendant's motion for judgment notwithstanding the verdict, he contends there was no evidence to authorize the submission of special issues Nos. 10 and 13. No. 10 inquired if the child kept a proper look-out for her own safety and was answered in the affirmative. A sixteen year old girl across the street said she saw Yvonne walk to the curb near where she was injured; that she stopped and looked both ways, stepped off the curb, and stepped back upon the curb. The witness then looked away a "second or two", she said, and looked back at the child, and she had been struck and was lying in the street; this testimony without contradiction in any form was sufficient to make it a fact issue for the jury under the court's charge. Special Issue No. 13 reads: "Do you find from a preponderance of the evidence that Yvonne Ligon was negligent in attempting to cross Fifth Avenue at a place other than an intersection of such street with another street (as the term negligence is defined for you with reference to Yvonne Ligon)?" It was answered "No." Obviously the inquiry was made because of the existence of a City Ordinance prohibiting such. Considering her age, intelligence, capacity and discretion, whether or not the degree of care shown to have been used by her for her own safety was sufficient and raised a fact issue for the jury. Texas & N. O. R. Co. v. Blake, Tex.Civ.App., 175 S.W.2d 683, writ refused.

By points 7, 8, 9, 10, and 13, appellant presents separately his objections and reasons why special issues 4, 5, 6, 7, 10, and 13 should not have been submitted. Under point 13 it is contended that it was negligence as a matter of law for Yvonne to attempt to cross the street at a place other than at a street intersection. What we have said referable to appellant's contention that he should have had a judgment non obstante veredicto sufficiently indicates that we believe and so hold that the points specifically pointing out the alleged erroneous submission of the special issues mentioned are without merit, except as to the form in which No. 6 was submitted. The matter presented in that issue should have been submitted but in a way free of duplicity, and in conformity to the pleadings. If the pleadings should be amended before another trial is had, the situation may be changed.

Appellant's fourth point of error has given us much concern. It involves the injection of indemnity insurance into a case where injuries are sustained by a person, as a result of being struck by the automobile of the insured. The circumstances here involved are different in many respects to the many cases where the question has been discussed. However, it is not without a precedent.

■■■ While the jury was being selected, each juror was asked many questions by both sides, inquiring of their service and qualifications as jurors in the case then to be tried, and on voir dire counsel for appellee (the plaintiff below) asked the whole panel this question: "Are any of you employed by or do any of you have any financial connection with the Commercial Standard Insurance Company? If so, hold up your hand." Two of the jurors responded and upon further questioning they said they held policies of insurance with that company. No additional questions were asked on the subject, and no further reference was made to the matter. The court's order shows that there were available other jurors from which a new panel could have been drawn. Counsel for appellant (the defendant below) promptly moved the court to discharge the entire panel and requested that a new panel of jurors be summoned because of the question asked, upon the theory that the inquiry was prejudicial and inflammatory and calculated to give to the jurors the impression that the Commercial Standard Insurance Company was the carrier of insurance on defendant Green's car. The motion to discharge the panel and to sum-

mon a new one for the trial of the case was overruled by the court. It has frequently been laid down as a settled rule of procedure in this state that it is error for the plaintiff to mention the fact or to, in any way, indicate in the presence of the jury that the defendant is insured against liability which plaintiff is seeking to establish. Myers v. Thomas, Tex.Sup., 186 S.W.2d 811. The same general rule is laid down and many cases are cited to confirm it in Chapman v. Evans, Tex.Civ.App., 186 S.W.2d 827, writ of error refused, want of merit. The announced rule applies even though the plaintiff by inadvertence or oversight propounds questions which will elicit an answer from a witness disclosing that indemnity insurance may be carried. Continental Oil Co. v. Barnes, Tex.Civ.App., 97 S.W.2d 494, writ refused. The rule announced has grown out of court decisions and common experiences among the bench and bar. Our Supreme Court in Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, said: "The Supreme Court will take judicial knowledge of the fact that a jury is more apt to render a [judgment] against a defendant, and for a larger amount, if it knows that the defendant is protected by insurance," citing Kuntz v. Spence, Tex.Com.App., 67 S.W.2d 254. When the Supreme Court takes judicial knowledge of a fact, it is one "which is so notoriously known that everybody, including even judges, knows it; and hence there is no need to prove it." 17 Tex.Jur. 168, Sec. 7.

■ It is undoubtedly true that in cases where a jury trial is demanded, both litigants are entitled to a jury composed of men free of bias and prejudice and without an interest in the subject matter in litigation. As a general rule our courts have been very liberal in permitting a broad range of inquiries on voir dire to enable counsel to intelligently use their peremptory challenges. If counsel has reason to believe that a juror is directly or indirectly interested in the result of the trial to be had, he has a right to question the juror touching that interest. Our statutes do not circumvent pertinent and material inquiries. But the question before us is, does this privilege and duty of counsel entitle him to propound such inquiries in a way that is calculated to lead a juror to believe that an insurance company named by counsel has an interest in the result of the suit? If it must be conceded that jurors will more readily find a verdict against an individual whom they believe is protected by indemnity insurance and for a greater amount than they otherwise would, then it must follow that the very nature of the question asked in this case would have a tendency to create a bias or prejudice in the mind of the jurors one way or the other and thwart the very purpose for which he was given the privilege to make inquiries to ascertain if such prejudices existed.

The decisions of our Courts of Civil Appeals are not in complete harmony upon the immediate question involved in this case. Appellee, whose counsel propounded the offending question to the jury, cites and relies upon Cooper & Jones v. Hall, Tex. Civ.App., 168 S.W. 465, and if we properly understand the brief discussion of the point in that case, it appears that that court declined to reverse a judgment when counsel for plaintiff had asked the jurors on voir dire whether they had any stock in any employe's liability insurance company or were in any way interested in or connected with any such company. That court said the case under discussion involved a similar question to that discussed in Dow Wire Works Co. v. Morgan, Ky., 96 S.W. 530. The cited case did not reach the Supreme Court on writ of error or otherwise. Many other jurisdictions apparently adhere to the same doctrine. See Annotations in 56 A.L.R. 1457 and 74 A.L.R. 860.

■ Contrary to the holding in the Cooper & Jones v. Hall case, supra, is Lange v. Lawrence, 259 S.W. 261, writ dismissed, by the San Antonio Court of Civil Appeals. In that case the jurors were asked on voir dire if any of them or any of their relatives were in any way connected with any liability insurance company or if they owned any stock in any insurance liability company. The same objection and motion were made in that case as were made in the instant one. They were overruled as they were in this case. In passing upon the question, the court among other things, said: "It has been repeatedly held to be error for the parties to ask any questions or make any statement within the hearing of the jury from which the jurors would infer, or which would suggest to them, that the defendant in such case carried liability insurance, or that an insurance company, and not the defendant, would have to pay any judgment the injured person might recover against the defendant." In support of the quoted state-

ment numerous cases are cited. Among them is that of Gordon Jones Construction Co. v. Lopez, Tex.Civ.App., 172 S.W. 987, writ of error dismissed. In that case a similar question was asked on voir dire to that involved before us. The court recognized the right of counsel to inquire of all matters which he deemed material to his client's interest but condemned an inquiry of all the jurors in an effort to ascertain if any of them were in any way employed by an insurance company writing employe's liability insurance. Much was there said about the extent to which counsel could go on questioning jurors but the rule was laid down that courts should condemn such practice in conveying in any subtle way the idea to the jury that an insurance company was involved in the law suit. It is the settled doctrine in this state, pronounced many times under varying circumstances, that in cases of this character between two individuals where there is nothing to indicate that either carries indemnity insurance, that litigants may not by word, act, or deed convey to the jury the idea that some insurance company will be called upon to pay the judgment entered; if this rule is infringed a reversal of the judgment must follow. See 36 Texas Digest, p. 150, Trial, ☞127 et seq. Likewise it may not be approached by questioning jurors on voir dire. 26 Tex.Jur. 648, sec. 84. The line must be drawn somewhere between the definite right of counsel to ascertain if jurors are qualified to try the case at hand and the rights of a defendant whose rights are equal to those of the plaintiff. Other matters are irrelevant and immaterial. This rule is not based upon any rights an interested insurance company may have in the suit but upon the rights of the defendant. He may not have indemnity insurance in which case he would suffer the same consequences as he would if he did have insurance. It is believed that far more harm would come from a relaxing of the fixed rule than if strictly adhered to. We believe that if by questions on voir dire suggestions of insurance should be allowed, the flood gates would be opened that would in effect abrogate the rule prohibiting the injection into a case of immaterial matters.

There was nothing in the style of the case here involved to indicate to a jury that the Commercial Standard Insurance Company or any other company had any interest in the outcome of this case. The pleadings, of course, did not divulge it nor did any witness say anything that could convey such an idea. Neither pleadings nor evidence would have been permitted by the court to impart such information to the jury. There can be no doubt but that the question propounded by counsel to the jury before being impaneled did impart sufficient information to lead at least some of the jurors to believe that the defendant in this case was protected by a policy of insurance. It makes little difference as to the good faith of counsel in asking the question for the purpose of obtaining needed information—the result and effect of the question were the same as if he had made the inquiry for the deliberate purpose of accomplishing the end that it obviously brought. The plaintiff's rights ended where the defendant's began. A motion for new trial was filed in this case based upon jury misconduct in discussing insurance during their deliberations. The jurors were called back to testify on a hearing of the motion. It is reasonably certain that for a time during their deliberations they did talk among themselves about the probability of Green's carrying insurance. The foreman, at one time, heard a part of such discussion and promptly warned the jurors not to consider that matter. Thereafter, one of the jurors, without the knowledge of his fellow jurors, wrote a note and asked the foreman to have it transmitted to the trial judge; this was done and the question asked by the juror was: "Did the Green Floral Company carry liability insurance at the time of the accident?" The court replied in writing to the jury in effect that whether or not either party carried insurance was no concern of the jury, and that they should not discuss insurance for any purpose, but should answer the questions propounded to them as directed by the court. It is also certain that one of the jurors said on the hearing of the motion that he remembered hearing counsel ask the jury about their connection with the Commercial Standard Insurance Company and "just presumed that Green carried insurance." After the court replied to the note of the juror nothing more was said during the deliberations about insurance. This was found as a fact by the court in overruling the motion for a new trial. We perceive that the evidence in this case was so conflicting as to render the margin for plaintiff's recovery very narrow and that in all probability the effect had upon

the jurors by counsel making the inquiry about an insurance company perhaps caused plaintiff's theory to out-weigh that of defendant s, resulting in a verdict favorable to plaintiff. See Gordon Jones Const. Co. v. Lopez, Tex.Civ.App., 172 S.W. 987, writ dismissed, and Harry Bros. Co. v. Brady, Tex.Civ.App., 86 S.W. 615, writ dismissed.

We conclude and so hold that in view of the numerous inhibitions by our courts injecting the insurance issue into such cases as this that the right of examination on voir dire should be limited to the extent that such examination must not disclose to the jury that there is indemnity insurance in the case. The point presents reversible error and must be sustained.

Points 5 and 6 assert error in the refusal of the court to grant appellant a new trial based upon alleged misconduct of the jury in discussing insurance while deliberating upon their verdict. We have already pointed out that as a matter of fact the jurors disclosed upon a hearing on the motion that at least some of them did discuss insurance during the period of deliberation. That insurance was mentioned in the jury room upon two occasions and finally a juror wrote the note to the trial judge, above referred to; that upon receipt of a reply from the court insurance was not again mentioned. We refer to these incidents in connection with the probable effect plaintiff's counsel's question on voir dire had upon the jurors. The trial court upon hearing the motion for new trial filed his findings of fact thereon and indicated that insurance had been discussed by the jurors prior to the time he instructed them not to do so; and that they desisted thereafter; and that the verdict was not reached until the next day after the delivery to the jury of his instructions concerning insurance. He also found as a fact that "the probability or possibility of the defendant being covered in whole or in part by insurance did not influence the verdict of any juror." We note at the conclusion of the hearing of the testimony by the jurors, on motion for new trial, the court was not free from doubt as to his contemplated order to overrule the motion based upon the question of "insurance" that had crept into the case. The order of the trial court overruling the motion for new trial, coupled with his findings of fact, may be construed to mean that he found as a fact that the alleged misconduct did not take place. If this construction can thus be made, his findings are final. But it may be doubted that his finding, last above quoted, to the effect that the discussion among the jurors "did not influence the verdict of any juror" is not an exclusive finding of fact. In view of the fact that this judgment must be reversed for reasons hereinabove stated, we find it unnecessary to determine the effect of that finding whether it be one of fact or law. See Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, 464. The points of error are therefore overruled.

Points 11 and 12 respectively complain because the court declined to submit appellant's requested special issues in groups of "A, B, and C, and E, F, and G." Without further prolonging this opinion by quoting the requested instructions we are content to say that the matter contained therein was in substance submitted to the jury by the court in his main charge and they present no error requiring reversal.

For the reasons hereinabove indicated we hold that the judgment entered in this case cannot be permitted to stand but that the cause must be reversed and remanded for another trial not inconsistent with our holdings herein.

Reversed and remanded.

## On Motion for Rehearing.

Both parties have filed motions for rehearing in this case. The defendant (Green) insists that the disposition made by us of his points 11 and 12 should be revised by us. We said in the opinion, substantially, that both sets of requested issues were effectively covered in the court's main charge. From a careful review of the record we think we did not assign the proper reason for overruling the points. Requested issues "A", "B" and "C" were inquiries of whether Yvonne Ligon failed to warn the driver of defendant's car that she was going to attempt to cross the street at the place of the accident, and whether same was negligence and proximate cause. Error was assigned by point 11 because the requested issues were not submitted.

Point 12 complains because the court refused to submit requested issues "E," "F" and "G." These issues would have inquired whether Yvonne Ligon ran into the street at the time of the accident, and was same negligence and proximate cause. Both acts of failure to warn the driver and the child's running into the street were pleaded by defendant as acts

750

of contributory negligence and proximate causes. We have again searched the statement of facts and we find not a word of testimony on either point raised. No witness is shown to have seen the child after she was seen standing on the curb and before she attempted to cross the street. The record is entirely silent as to whether or not she signaled the driver as he approached, and whether she *ran* into the street (as distinguished from walking into the street) as argued in the motion. We are cited to Rules 277 and 279. Those rules specifically provide that the court shall submit the material and controlling issues on all matters pleaded and upon which evidence is offered. There being no evidence offered to support either allegation, the court properly declined to submit the requested issues, although plead.

If upon another trial there should be evidence introduced on either or both of the matters raised by the requested issues, of course it would be proper for the court to submit one or both in accordance with the cited rules.

Substituting what is here said for what was said in the original opinion on the points involved, which explanations in no way change the final conclusions reached by us, we overrule both motions for rehearing.